Good morning. The next case on the calendar is Cecile Barker v. Commissioner of Internal Revenue. Mr. Garvin and Ms. Hume, are you both ready? Yes, Your Honor. Mr. Garvin, would you like to save five minutes for rebuttal? Yes, Your Honor. All right. Mr. Garvin, please proceed with your argument. Thank you. Good morning, Your Honors. I'm David Garvin, and I represent Appellant Cecile Barker in this matter. The particular case that we have before the court arises from the 2011 Individual Income Tax Obligation of Mr. Barker. In this particular case, Mr. Barker did not file his 2011 Form 1040 Individual Income Tax Return on a timely basis based upon two factors, a fire which destroyed some records, and a second factor, the tax return that was filed was filed as a result of ID theft. The United States received the tax return filed as a had on file forms that reflected that Mr. Barker had received $3,375,000 of income. That was not reported on the fraudulent tax return. And as a result, the IRS issued a statutory notice of deficiency. After the statutory notice of deficiency, which alleged additional income of $3,375,000 had been filed, Mr. Barker retained counsel and responded. And prior to court taking place before the United States Tax Court, Mr. Barker filed a real tax return for 2011, which indeed reflected the $3,375,000. And was that filed in 2016? Yes, ma'am, it was. That return not only reported to $3,375,000, but it reported an additional $3,391,722. However, Mr. Barker had accumulated net operating losses from an entity known as SoBe Entertainment, LLC. May I ask you a question, Mr. Garvin, though? And maybe I'm incorrect in the record, but I don't think that you raised the argument about the fact that the 2011 income tax return had been filed improperly based on identity theft. Am I wrong about that? We only mentioned it in passing, but it is part of the argument, which is our third argument, Your Honor. Don't you have to raise that specific argument? You can't just raise something in passing reference. Correct. We are not saying that that is the basis for reversal in this case. Okay. The taxpayer and his counsel presented evidence that SoBe Entertainment had lost funds each year from its inception and that there were net operating losses that were available that would offset the entire amount of the additional taxable income for 2011. The court erroneously stated that because Mr. Barker could not or did not produce his 2002, 2003, and 2004 tax returns, the court stated that there was no way to know how much of the net the court had no way to know what amount was available to offset the income from 2011. But aren't you as a taxpayer, don't you have the burden of proving the entitlement to claim deductions? Yes. And the answer to the question is yes. And Your Honor, I have conceded that 2002, 2003, and 2004, that the taxpayer failed to file into evidence those tax returns. And therefore, the court may have been correct as to 2002, 2003, 2004. But what the court failed to take into consideration is Section 172B of the Internal Revenue Code, which deals with net operating loss carrybacks and carry forward. And in 172B, Your Honors, it makes clear that during those years back in set 2008 through 2011, a taxpayer could elect on the tax return to carry the net operating loss forward and not carry it backwards. The court did not mention that and did not comprehend that that meant that the only net operating losses that were necessary to review were the 2008, 2009, 2010, because the taxpayer had properly elected to carry those net operating losses forward. Therefore, they could not have been used up by prior years. And under any circumstances, even if they were taken back, they could only be taken back two years. So from 2008, it could only be taken back to 2006. Therefore, the missing tax returns, meaning the form 1040s for 2002, 2003, and 2004, were irrelevant. Garvin, the problem is that's not the only thing that was cited by the tax court. He said, among other things, you were missing the 1040s completely for 2002, 2003, and 2004. And for the periods 2005, 2006, and 2007, you had the returns, but you were missing what he thought was important information, including the amount of loss from SOBI. But more basically, he says, I can't really calculate whether there were reasonable business expenses here. I couldn't tell it simply from the credit card, or from a cash disbursement, because it didn't indicate how and why those expenses were, in fact, legitimate business expenses in the ordinary course of business. And so he had difficulty establishing the expenses as being expenses that could be built into the calculus. And he said he had additional difficulty in calculating income as well. So we said on both sides of the ledger, he was unable to calculate what the real income was, and what the real expenses that were properly deductible, and the burden was, as Judge Lagoa put it to you earlier, on your shoulders to establish that these expenses were proper business expenses that could be built into the calculation. So his opinion raised a variety of five, six, and seven. Expenses, how could one tell whether these were properly calculable expenses when the credit card tells you nothing about how that was necessary for the business? Yes, Your Honor, there were two parts of that. I'd like to address both, if I may. 2005, 2006, and 2007, during those years, the court was right in that in 2005, the taxpayer did not have Sobeys canceled checks available. But 2005, 2006, 2007 are not relevant for this calculation. In 2008, 2009, and 2010, those are the only years that need to be focused on. And now to address the second part of Your Honor's question. In 2008, 2009, 2010, Sobey canceled checks were submitted into evidence. So all of the checks were there. All of the bank statements were there. And in 2000, Mr. Barker testified that he reviewed all checks before he signed them to make sure that they were paid business deductions. In addition to Mr. Barker, the controller testified also with regard to the payment of business activity. And the net result was that they had a general ledger. And the general ledger, which is an organization of the canceled checks, was introduced for 2008 and 2009. Maybe I'm wrong about this. I thought the general ledger was missing for four years, for 03, 04, 09, and 10. Did I have that wrong? Yes, Your Honor, I believe it's 02, 03, 04, and 010. Four years, 2002, 2003, 2004, which are not relevant to our argument. And 2010. They, they were available for 2005, 2006, 2007. But again, those years are not relevant to this argument. 2008, they were available. 2009, the general ledger was available. And as the court well knows, general ledger is based upon the source document, which are the canceled checks. The general ledger categorizes what the check was for, whether it was for advertising rent, or some other expense. Was there a missing ledger in 10, the general ledger? Yes, sir. There was no ledger in 10 either. Yes, it was 8 and 9, but not 10. 8, 9, and 10 are the only years that are relevant here. And the court had the court focused on 172B, the court would have realized that it was irrelevant to talk about the years 2002 through 2007. Only 2008, 2009, and 2010 were relevant. And those, those losses, net operating losses, in which we had so these tax returns, so these bank statements for all three years, so these canceled checks for all three years, Mr. Barker's tax returns for all three years to show what he used. Let me ask you the question this way. Simply looking at the canceled checks would not tell anyone whether they were properly calculated as ordinary and necessary business expenses, would they? No, simply looking at them by themselves in a vacuum would not. But when you know the nor would the fact that there was a cash disbursement, tell me that that was for a legitimate expense, rather than I bought a plane ticket to Sydney, Australia, and took my wife on a nice trip halfway around the world. Absolutely, Your Honor. And that is why Mr. Barker himself testified that the canceled checks from Sobe, he was the sole signatory and would not go through. Looking into this record, would it reveal that he went through each check and said, check number one, this was for an advertising expense with regard to this music group. Check number two was also for renting a hall for a music performance. Check number three was to pay for the recording studio. Check number four, did he do that check by check and expenditure by expenditure? Of course not, Your Honor. There were hundreds if not thousands of checks that Sobe Entertainment went through for the years 2005 through 2000. Did he do it in some generic way? Yes, sir. And what he said was that he is the sole signature on the Sobe Entertainment account, that when the checks are prepared, he reviews the documentation, and he is the one who signs them and he would not sign them if it was not a legitimate business expense. Does he have to take his word for that? No, they don't. There was nothing. They don't take his word for anything. I mean, don't you have the burden of establishing that expense X was for a necessary and ordinary business undertaking? Don't you have to show that each of these so-called expenditures were proper business expenditures? I think the answer is yes. I'm just asking you, how did you go about doing it? The tax court said you failed in your burden. Well, the tax court focused on the fact that 2002 2003 2004 individual income tax returns were missing and therefore the tax court did not know how much of the net operating loss had been consumed. And so the point that needs to be made is the tax court need not consider 2002 through 2007. The only years were 2008 through 2010, which resulted in 7,098,518 net operating loss that Mr. Barker's returns reflect was not used. And yes, the court is correct. The burden of it. And customarily an IRS audits, what is produced for those audits is the tax return, the bank statements, the canceled checks and the general ledger. And all of that was produced here. In addition to that, Mr. Barker testified that he only signed checks that were business expenses. And those checks were present canceled checks into evidence, as well as the general ledger for 2008 2009. In addition to that, the CPA who prepared the tax returns testified, as well as the chief financial officer. The government did not present any evidence to contradict the accuracy of any of those documents or the testimony of any of those individuals. Your Honor, this is a clear case in which the court focused and and it stated and is in our brief when it mentioned the Cohen case. And was not applicable because the court could not determine how much of the losses were absorbed prior to 2011. Because the petitioner did not produce his tax returns for 2002 through 2004. The court simply was had forgotten that 172 only permits a two year carryback. And in this case, the tax returns on their face show that in 2008, nine and 10, the election was made only to carry it forward. I will read the quote from the opinion. Further, even a petitioner was able to substantiate so these business expenses, we cannot know how much of those losses was absorbed by petitioners other income in the years prior to 2011. Petitioner did not produce his tax returns for the years 2002 through 2004. That 2002 through 2004 is irrelevant. So is 2005 through 2007. Your Honor, 2008 2009 2010, the records necessary to establish the net operating loss from those three years is present. And all the records are available for 2008 and 2009. There is no reason for the tax court not to have permitted the 2008 2009 and 2010 net operating loss carry for even if Mr. Garvin, we've allowed you to go way over time and into your rebuttal time. I'll allow you to have some minutes remaining for rebuttal, but I'd like to hear from the government now. Thank you. May it please the court. My name is Lauren Hume, and I represent the Commissioner of Internal Revenue in this appeal. I'd like to start with a point that Mr. Garvin made repeatedly in his argument this morning, which is the idea that he properly waived carry back of the net of any net operating operating losses that he had for 2008 2009 and 2010. That's contradicted by the returns that he submitted into the record. Section 172 B three of the Internal Revenue Code does permit carry back of net operating losses to be waived, but it must be done on a timely filed return. If this court looks at Mr. Barker's 2008 and 2009 tax returns, you can see that the 2008 return was filed more than a year beyond the extended deadline. It was filed in November 2010 instead of October 2009. His 2009 return was filed more than three years late in 2013 instead of showing that he actually filed that return, let alone that he timely filed it. As a result, the premise of his argument that only 2008 to 2010 are relevant because he waived carry back of any losses is not accurate. As a result, the tax court was right that at least 2006 and 2007 would also have been relevant because since he did not timely waive carry back, he would have been required to carry back any losses first to 2007 and then to 2006 prior to taking a loss in 2008 or carrying any losses forward. Also, may I ask you a question regarding the notice of deficiency? Is there a due process violation by allowing you to increase the deficiency amount following the notice of deficiency? Your Honor, there is not. The Commissioner issued a notice of deficiency in June 2014 after Mr. Barker failed to file an income tax return for that year. Mr. Barker timely petitioned the tax court for redetermination of his deficiency in September 2014. Almost two years later in August 2016, Mr. Barker prepared a return for 2011 that he sent to the Internal Revenue Service. At that point, the Commissioner was not allowed to issue a subsequent notice of deficiency officially disallowing additional deductions that Mr. Barker put into that late return. Mr. Barker under Tax Court Rule 34 had the obligation to put any deductions that he thought he was entitled to into his tax court petition. He was consistently counseled below and his counsel recognized that they needed to raise any deductions they thought they were entitled to because even in his original petition, he raised the net operating loss deduction even though he had not yet filed a return claiming the net operating loss deduction, nor had the Commissioner officially disallowed the deduction because he hadn't filed the return yet. But when he filed his amended petition, he again raised only the net operating loss deduction and did not put in the additional deductions that he now claims he was entitled to. The Commissioner put Mr. Barker on notice that he intended to increase the amount of the deficiency that would be sought based on the evidence that was admitted at trial. First, the stipulation in which Mr. Barker stipulated that he had an additional $3,375,000 in Schedule D capital gains, and also via his sworn statement on his return in which he admitted that he had several much smaller amounts of income from another entity that he owned. And at the very beginning of the trial, page five of the trial transcript, the counsel for the Commissioner said that there is evidence of additional income and that he would be seeking to amend his answer to conform his answer to the amended petition to the evidence of additional income submitted at trial. He then did that after the close of the trial. Returning to Mr. Barker's argument that he is entitled to a net operating loss deduction arising solely from 2008 to 2010, as I mentioned before, again, the premise of that argument is missing because he did not timely waive carryback and thus he was required to carry back even for those years. An additional point on this argument, Mr. Barker forfeited this argument. It is a new argument that he's raising for the first time on appeal. The Commissioner mentioned in his brief that the court should consider this argument to have been forfeited. Mr. Barker has made no attempt on appeal to explain why he fits into any of the exceptional circumstances in which this court is willing to consider new arguments on appeal. And so this court should consider it forfeited and not even reach the 172 v. 3 issue. And finally, even if this court were to find that the argument both had not been forfeited and that for some reason 172 v. 3 did not apply, the court nonetheless should reject the arguments on the merit as well. Mr. Barker's briefing makes clear that the numbers on which he relies for the calculations that he put into the first section of his argument on appeal, those numbers come both from Mr. Barker's individual income tax returns and from Stobie Entertainment's 10-5 information returns. Those numbers were not proven in the trial below, and the numbers on the returns are not presumed. Judge Marcus started to get into a lineup of questioning with Mr. Garvin that explains in large part why Mr. Barker failed to prove that his business had net operating losses even in the more limited years of 2008, 2009, and 2010. Mr. Barker points to the bank statements, the canceled checks, the general ledger for several years, and Mr. Barker- Counsel, can I ask you a question regarding the general ledger? Is it sufficient to provide documentation for expenses and deductions? No, Your Honor. Okay. Answer the question, I guess. Thank you. Excuse me, Your Honor. No, Your Honor. Even the general ledger, even coupled with the canceled checks is not sufficient. Counsel, I'm curious about that. Suppose the check was made out to ABC Advertising Company, and the general ledger reflected that payment for the purposes of advertising. Would that be enough? And if the answer is no, why not? For advertising, that could be enough, potentially. You wouldn't need Barker to say, oh, and by the way, I advertised in Variety or this trade journal for hip hop music or something like that. It would be enough, presumably, if the general ledger reflected the purpose. If the purpose is obvious from the general ledger, then yes, Your Honor. But I will say for the vast majority of the entries in the general ledger, the general ledger is not sufficient. Number one, because it's just too vague from the general ledger to understand what the expenses are that are being paid. Many, many of the entries are just an individual's name in the payee column, a memo column that then says expenses, and then a categorization column that says something like travel. But if you have the general ledger and the canceled checks, and together, are they not sufficient so that if the tax court disallows the deductions, that it's clear error by not considering that sufficient documentation? No, Your Honor. Again, as Judge Marcus said, there are a limited number of expenses that could be obvious enough from the general ledger that they would have been potentially considered substantiated. However, the vast majority, even combined with the canceled checks, the memo column in the general ledger, generally, my understanding is it corresponds to the memo line of the check. And so just like the general ledger, the check simply has an individual's name, a memo that says expenses or entertainment or travel, and then the check is categorized in the general ledger, many of which are categories to travel, and others are just, say, split, which presumably means it was categorized between multiple categories. And this is not sufficient for a couple of reasons. Number one, just looking through the general ledger, it's obvious that there were many expenses that are subject to strict substantiation under Section 274 of the Internal Revenue Code. Anything for travel or entertainment needs to have strict substantiation, which means there needs to be some sort of contemporaneous document, like a receipt or a diary or a log that explains what the date of the expense was, the amount of the expense, the place of the expense, to the extent it was a trip, what the purpose of the trip was, to the extent it was entertainment, who the recipient of that entertainment was, what the business purpose of the entertainment was. There are innumerable entries in the general ledger that just facially appear to come within the realm of 274. Even for the ones that don't necessarily come within the realm of 274, the general ledger entries are still much too vague for the vast majority of entries, where it includes things like an individual's name, it just says legal fees, and then some classification. Again, someone needed to provide either additional documentary evidence in the forms of receipts explaining what was paid for or testimonial evidence in the form of someone explaining, you know, Adrian White was an attorney that we hired to prepare contracts with our entertainers. The notation for legal fees paid to him reflects us paying him for contracts. It's, you know, Mr. Garvin is right that there were many, there were hundreds or thousands of entries, but the very high level testimony that his client gave that he was the only person signing checks and he made sure it was a real business expense before he signed that check, that's not sufficient. At the very least, he needed to be going category by category through the types of expenses that were listed in the general ledger, explaining who these individuals were who were receiving payments, what these payments were for. To the extent there are things that just say an individual's name and then expenses, he needed to, that either that person needed to testify about what their expenses were or there needed to be to back it up. This all goes into showing that Mr. Barker failed to establish that his business, Sobe, actually had net operating losses, even for the years 2008, 2009, and 2010. And I will note too that for much of his opening argument- Ms. Hume, if I can, to the extent that the tax court says, for example, he failed to establish that this was an ordinary and necessary business expense for check X, Y, or Z, is that fact finding that we were due for clear error or is that a mixed question of law effect? Do you understand my question? I do. I'm inclined to think that it would be a finding of fact that it would be reviewed for clear error, but I had not previously considered precisely that question before. Certainly, the question of whether or not Mr. Barker proved his entitlement to a net operating loss deduction, that is reviewed for clear error under this court's precedent. I will also note that Mr. Barker sort of starts with part two of the tax court's analysis when he argues that the tax court erred by not letting him have a net operating loss deduction for 2008 to 2010, which is that he points to the fact that there were missing returns for earlier years and crucial information missing from his 2005 to 2007 returns. However, it's clear from page 20 of the tax court's opinion that the tax court found, first of all, that Mr. Barker failed to substantiate the amounts or business purposes of Sobey's expenses for, at a minimum, tax years 2003, 4, 10, and 11. So the tax court did not find that Mr. Barker substantiated even that his business had had deductible net operating losses for any years, let alone that it did have it for 2008, 9, and 10, which is a predicate to being able to take those deductible losses as a deduction against Mr. Barker's individual income tax returns. I'll add, too, that as well as the numbers on Sobey's returns not having been proven, the numbers on Mr. Barker's own returns for 2008, 9, and 10 likewise have not been proven. He reported negative income in the millions of to the extent that his negative income resulted from Schedule C expenses or losses or itemized deductions or various other deductions. Just as with tax year 2011, he actually had to prove that he incurred those expenses and deductions, and he made no attempt to do so. As a result, he has failed to show that there was any clear error in the tax court's finding with respect to the net any further questions that the court may have. Otherwise, I think that the arguments are well supported. I just have one for you, Ms. Hume. The tax court found beyond the lack of substantiation for the business expenses that he couldn't fairly calculate income either, that the problem was on fair and necessary business expenses, and he couldn't calculate income. What's the basis for that determination on the income side of the ledger? There's two parts on the income side of the ledger. Number one, by failing to provide his returns for all prior years and by providing some returns that were missing crucial information, that meant that even assuming we accepted that net operating losses were correct in the amounts that he reported and that the income that he reported was correct, we still wouldn't know the interplay of how much of the net operating losses were absorbed by prior years income. He was required to carry back. He needed to prove his income in the prior years to prove that the net operating loss was not fully absorbed in those prior years. He failed to prove income, which meant he failed to prove that the net operating loss was not absorbed. Then part two of it is that, as you can see from the chart, I believe it's at page 14 of Mr. Barker's opening brief, he was reporting income of negative millions of dollars. The only way he was getting to negative millions of dollars in income was through massive itemized deductions, massive Schedule C losses, other Schedule E losses from other businesses that he owned, other losses that were just described as a loss of millions of dollars from other income. To the extent that he had items on those prior years tax returns that were reducing his income through losses or deductions or expenses, he had to prove those just like he had to prove his net operating loss deduction here. His returns are not presumed correct to the extent that they include deductions or items that reduces tax liability. He actually had to prove that he had those expenses and therefore that his income was reduced enough that it was unable to absorb net operating loss deductions. Unless any of your honors have any further questions, I will rest on the commissioner's brief and ask that this court affirm the decision of the tax court. Thank you, counsel. Mr. Garvin, you have five minutes remaining. Thank you. Mr. Garvin, you're muted. You're muted. Thank you, your honor. I'd like to address first counsel's argument that if the returns were filed for 2008, 2009 and 2010 were not timely, then the election carried forward would not apply. Well, even if we did not permit the election to carry forward the net operating loss for 2008, 2009, 2010, the furthest back it would go would be 2006. And the Sobey entertainment had net operating losses for 2006. No part of the net operating loss carryback would have been utilized. I would also say that 2006, 2007, the records were complete, meaning Sobey tax returns were introduced in evidence, the bank statements were introduced to evidence, the cancel checks were introduced to evidence, the general ledgers were introduced to evidence, and Mr. Barker's 1040s were introduced. The purpose for introducing the 1040s was to show whether or not Mr. Barker absorbed or utilized any part of the net operating income. And the 2006 to the 2007 2008 2009 2010 tax returns. Council now is making some question, Mr. Garwood. You've made an argument in this court about the waiver of carryback for eight to 10. Did you make that argument in the in the tax court? Or is this the first time argument has been raised? Your Honor, I, I was did not represent the client in tax court. And I do not remember whether or not the argument as to the election was made. I do know that the reason I raised the question is not operating. I don't think whoever represented your client in the tax court made the very argument that you're making here about waiver for the carryback for eight to 10. I think this is the first time it's being raised. And if that's the case, we've got a whole body of law, basically saying, we're not going to consider an argument made for the first time in this court. If you didn't give the trial court the opportunity to hear it and consider it, particularly when, if it had been raised, the court really could have examined it in the context of the facts of the of the case. And that's why I asked whether this argument was even raised. I didn't think it was. Your colleague said it wasn't. And I just wanted you to help me with that, if you could, about this was fairly raised in tax court. Yes, Your Honor, I know, or I believe that the net operating loss itself, that issue was raised, whether the 172 B, which is part of the net operating loss section of the two year waiving the two year carryback was raised or not. I do not recall that it may have been raised in the 155 computations. However, so let's assume for the purposes of my question, that this 172 B waiver was not raised in the tax court. Why should we consider it for the 10 would be carried back. And 2008, the earliest year would be 2006. And that would not change anything. Because 2006 resulted in its own net operating loss. So there would be no, no diminution of the net operating loss from 2008 2009 2010 caused by carrying it back to 2006. But Your Honor, even if we carried it back to two years, and then that would broaden the range of relevant years, instead of focusing merely on 2008 2009 2010, we would have to also focus on 2006 and 2007. But if we do that, all the records required are there to substantiate the expenses, and that that would be, there would still be approximately $6 million net operating loss to offset the expense. And I don't believe the court, excuse me, I don't believe the court did that properly. Also, with regard to the tax returns, and counsel mentioned that one tax return that was in evidence was unsigned, the tax, all the tax returns were stipulated to, to the authenticity, and were part of the record per stipulation. And finally, with regard to the statutory notice that was raised, Your Honor, the government when when the taxpayer filed late, but filed his 2011 tax return, he reported an additional $3,375,000. And actually, it was $3,391,722. The United States recognized that and accepted that portion of the tax return. And but no mention was made with regard to the expenses, the cost of goods sold that were listed on his 2011 tax return, which the IRS accepted for the income. And as a result, no evidence was presented during the trial about that. It was only after the trial, that it became appearance that the IRS position was counsel may ask you because I'm looking at the stipulation. And I apologize for interrupting you. But the stipulation of facts that was filed with regard to exhibit the 33 p, which is the tax return for 2010. It's attached and it's part of the stipulation. But then it hearsay, and that is a summary of evidence not in the record. So I'm not sure that that actually came in. It's not stipulated to really, for all intents and purposes. Your Honor, I think that the those objections ultimately were over overruled by the court, because I, I recall that when I read it, there, the facts, the tax court said, Well, you, you stipulated to the authenticity of this record, what is your objection? It's not, it's not relevant. And one of their objections was hearsay. But Mr. Barker, tax return, and Mr. Barker testified. So I don't know that the hearsay argument was considered well, well founded. All right, I'll look at the record. Thank you. Thank you. My time is up. But I would like to conclude by reemphasizing Your Honor, the court focused on 2002 2003 and 2004 and stated that Mr. Barker was missing records for those years. And that as a result, the court could not determine what amount of the net operating loss had been consumed. But it is not necessary, because detect the years that are are 2008 through 2010. But granted, if that issue was found, that waiver needed to be pled during trial, then the years that are relevant are 2006 through 2010. Those years, we saw a net operating loss of approximately $6 million. And Mr. Barker was denied the benefit of those of that net operating loss improperly. We'd ask that the court send this case back to the tax court to reopen the record and to make a finding as to the net operating loss and the effect on 2011 for the years 2006 through 2010. Thank you, Mr. Garvin. Thank you. Thank you very much, both of you for your argument. We appreciate and we'll take the matter under advisement. Thank you.